*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0192**

In the Matter of the Civil Commitment of: Milton Thomas

**Filed July 27, 2015
Affirmed
Smith, Judge**

Ramsey County District Court
File No. 62-MH-PR-14-324

Rick E. Mattox, Prior Lake, Minnesota (for appellant)

John J. Choi, Ramsey County Attorney, Stephen P. McLaughlin, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Kirk, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm the district court's order indeterminately committing appellant to the custody of the commissioner of human services as a sexual psychopathic personality because (1) the district court did not clearly err by finding that there was no suitable less-restrictive available treatment program, and (2) the district court did not abuse its discretion by not considering information irrelevant to appellant's individual treatment.

**FACTS**

Appellant Milton Thomas has a history of sexual-assault convictions, including a 1987 conviction for the rape and beating of two 15-year-old girls, two 1994 convictions for the rape of 13-year-old and 14-year-old girls, and a 2008 conviction for the rape of a woman, who suffered from Parkinson's disease, while in the presence of Thomas's seven-year-old niece. He also has "at least eight parole revocations," including four instances of absconding.

While incarcerated, Thomas participated intermittently in sex-offender treatment programs, but never completed any of them. A summary of Thomas's treatment history reported that "Thomas admitted that he felt entitled to sex, and 'the more the better.' He also indicated he chose victims he thought would be willing to engage in sexual behavior with him with little resistance."

In June 2014, the state petitioned the district court to commit Thomas as a sexually dangerous person and a sexual psychopathic personality. The district court convened a hearing in November 2014, receiving three expert reports addressing whether Thomas met the criteria for commitment. Two of the experts also testified at the hearing.

Each of the experts recommended that Thomas be committed as a sexually dangerous person and a sexual psychopathic personality. They agreed that Thomas was "highly likely to reoffend" and that there was no suitable less-restrictive alternative to commitment. After finding each of their opinions to be credible, the district court considered the six factors listed in *In re Linehan*, 518 N.W.2d 609 (Minn. 1994) (*Linehan*

*I*), and the five factors from *In re Linehan*, 594 N.W.2d 867 (Minn. 1999) (*Linehan IV*), concluding that each factor supported commitment.

The district court also considered Thomas's argument that his existing criminal sentence of lifetime supervised release could operate as a less-restrictive alternative to commitment. Based on Thomas's "extensive history of failures under corrections supervision [and] continued sexual offenses despite treatment and corrections consequences," it found that Thomas "may not be safely placed in the community at this time." The district court concluded that Thomas had not shown "clear and convincing evidence that a less restrictive treatment program is available which is consistent with [Thomas's] treatment needs and the requirements of public safety." Accordingly, it ordered that Thomas be indeterminately committed to the Minnesota Sex Offender Program (MSOP).

## DECISION

### I.

Thomas challenges the district court's commitment order, arguing that the district court erred by concluding that lifetime supervised release was not a suitable less-restrictive available treatment program. After a district court finds that clear and convincing evidence supports commitment as a sexually dangerous person or a sexual psychopathic personality, it must also consider whether the respondent has established by clear and convincing evidence that a less-restrictive treatment program is available that "is consistent with the person's treatment needs and the requirements of public safety." Minn. Stat. § 253D.07, subd. 3 (2014). The district court's finding on whether a less-

3

restrictive available treatment program exists must be supported by findings addressing the evidence presented to the district court. *In re Civil Commitment of Ince*, 847 N.W.2d 13, 25-26 (Minn. 2014). We will not reverse a district court's determination regarding the availability of a less-restrictive treatment program unless it is clearly erroneous. *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). A district court finding is clearly erroneous only when there is no reasonable evidence to support it, leaving us with "the definite and firm conviction that a mistake has been made." *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008) (quotation omitted).

The district court's conclusion is amply supported by evidence. The record shows that Thomas has a history of violent sexual assaults that recur after incarceration and treatment. Thomas also has a history of absconding and violating conditional-release rules. He has a poor record of participation in sex-offender treatment programs, having participated intermittently and completed none. Thomas's claim that his criminal sentence of lifetime supervised release would be sufficient to control his behavior is speculative and against the weight of the behavior pattern he has established over the course of his entire adult life. Moreover, Thomas cites no authority requiring that he must commit a sexual assault while on supervised release before the district court is allowed to conclude, based on his prior behavior, that he is a risk to public safety.

Thomas also argues implicitly that the district court's reliance on expert testimony to justify his commitment was erroneous because the experts lacked credibility, relied on actuarial assessment tools, and failed to consider the intensive monitoring he would receive during his lifetime supervised release. The district court is in the best position to

consider experts' credibility. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). Other than his disagreement with their conclusions, Thomas has highlighted no information that would undermine the district court's determination that the experts were credible. Also, although the supreme court has cautioned against reliance on actuarial assessments to the degree that they are duplicative of the *Linehan* factors, *Ince*, 847 N.W.2d at 24, the record here illustrates that the district court appropriately considered the experts' opinions and that the experts and the district court each analyzed the *Linehan* factors independently of their consideration of the actuarial assessment tools. Lastly, the record belies Thomas's contention that either the experts or the district court failed to consider the possibility that his lifetime supervised release conditions could provide a less-restrictive available treatment program. Instead, each expert referenced Thomas's inability to comply with release conditions, including "his repeated failures on community supervision," his "history [that] proves that he cannot be managed in the community, even under correction supervision," and his "resistance to rules and supervision." As such, we conclude that the district court did not clearly err by finding that Thomas did not meet his burden to show a suitable less-restrictive available treatment program.

## II.

Thomas also challenges the MSOP as a whole, arguing that the district court failed to consider the criticisms leveled against the program by a legislative report and the impact of federal district court litigation challenging MSOP's constitutionality. Arguments addressing the adequacy of treatment are "outside the scope of the commitment process." *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 651 (Minn.

App. 2011), *review denied* (Minn. Aug. 24, 2011); *see also In re Civil Commitment of Travis*, 767 N.W.2d 52, 58 (Minn. App. 2009) (summarizing caselaw establishing that right-to-treatment arguments are premature at the time of a commitment proceeding).

Thomas acknowledges that caselaw has repeatedly held that the information he sought to present to the district court is not relevant to the commitment process, but he predicts that ongoing federal litigation[1] will result in "a new jurisprudence in the law of civil commitment." Even if the impact of that litigation might ultimately produce the transformation that Thomas predicts, our existing caselaw states that Minnesota's civil-commitment statutes are not unconstitutional, *see Linehan IV*, 594 N.W.2d 871-72, and it is the role of the court of appeals to apply current law, not to augur future law. *See Lake George Park, L.L.C. v. IBM Mid-America Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998).

**Affirmed.**

---

[1] Since oral argument, a federal district court issued an order in *Karsjens v. Jesson*, ruling that some aspects of the MSOP are unconstitutional. *See* Civil No. 11-3659 (DWF/JJK), 2015 WL 3755870, at *27-32 (D. Minn. June 17, 2015). The federal district court did not, however, order entry of a final judgment, and it has not yet crafted a remedy. *See id.* at *35-36 (outlining the federal district court's process for crafting a remedy going forward). The federal district court also focused primarily on the constitutional issues posed for persons currently committed to MSOP; it did not rule that Minnesota's initial-commitment process was unconstitutional. As such, the federal district court's order in *Karsjens* does not entitle Thomas to relief.